UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARGARET CONE,                                    Case No. 16-11306

      Plaintiff                                   Sean F. Cox
v.                                                U.S. District Judge

MARK TESSLER, *et al*,                            Stephanie Dawkins Davis
                                                  U.S. Magistrate Judge

      Defendants.

_____/

## REPORT AND RECOMMENDATION
## PLAINTIFF'S MOTION FOR SANCTIONS (Dkt. 98)

## I.    PROCEDURAL HISTORY

Plaintiff, Margaret Cone, filed this motion for sanctions against defendants and non-party, the University of Michigan (UM) on August 23, 2018. (Dkt. 98). Non-party UM filed a response on September 6, 2018. (Dkt. 106). Defendants filed their response on the same date. (Dkt. 104). Cone filed a reply on September 20, 2018. (Dkt. 109). District Judge Sean F. Cox referred this matter to the undersigned on September 6, 2018 for hearing and determination. (Dkt. 105).[1] The parties filed their joint statement of resolved and unresolved issues on

---

[1] While this matter was referred for hearing and determination, just as with a motion for Rule 11 sanctions, a motion for sanctions based on the inherent authority of the Court is one that requires a magistrate judge to proceed by report and recommendation. *See e.g.*, *Lucas v. Telemarketer Calling from (407) 476-5670 and Other Telephone Numbers*, 2014 WL 12656104, *11 (S.D. Ohio Nov. 18, 2014); *see also Norris v. United States*, 1998 WL 839586, at *1 (E.D. Mich. Oct. 22, 1998).

November 20, 2018.  (Dkt. 122).  The Court scheduled a hearing on November 30, 2018.  (Dkt. 118).  The Court granted Cone's emergency motion to reschedule the hearing.  (Dkt. 125).  After reviewing the parties' submissions, the Court determined that a hearing was not necessary, and the motion will be decided on the papers.  (Dkt. 139).

For the reasons set forth below, the undersigned **RECOMMENDS DENYING** plaintiff's motion for sanctions.

## II.     FACTUAL BACKGROUND AND THE PARTIES' ARGUMENTS

A.     Plaintiff's Amended Complaint

Cone brought this action against defendants alleging breach of contract, accepting over $2 million by false promises, wrongful misappropriation of funds entrusted to them for the administration of a project, promissory estoppel and unjust enrichment.  The named defendants were employees of the UM during the occurrences giving rise to this lawsuit.  In 2009, through Cone's efforts, Egypt's Al-Azhar University agreed to engage in an exchange program called the World Leadership Program (WLP).  Cone chose Sherman Jackson at UM to head the WLP and be its face for Al Azhar and the Islamic scholars.  The WLP would be held at the International Institute at UM.  Cone convinced the United Arab Emirates ("UAE") to fund the WLP with over $2 million based on her proposal and budget.  The WLP would be in Ann Arbor from May to July 2010.

According to Cone, through calculated false promises and misrepresentations, defendants executed a scheme to 1) obtain control over the $2 million by promising to run the WLP under UM protocols and procedures, 2) divert WLP funds away from UM's oversight and into the Center for Political Studies, 3) create sundry accounts to pay themselves thousands of dollars, and 4) falsely claim to have performed work to justify those self-payments.

      B.    <u>Present Dispute</u>

Cone claims that the November 3, 2009 email produced by defendants and UM is fraudulent.  Though she was purportedly copied on the subject email, she does not remember ever receiving this email and indicates that it did not appear in her AOL email account.  (Dkt. 98, Pg ID 3666, 3687 ¶ 10).  According to plaintiff, the 11/3/09 email appears amid an email thread with the subject line of "Sherman." The thread starts with two email messages that Cone says are likely authentic, but the falsified email is time-stamped 10:44 p.m.  The metadata was missing for this email, among others.  Cone filed a motion to compel on 10/17/17, which was resolved by stipulated order.  (Dkt. 45).  The stipulated order obligated UM to produce the native file for 10 emails, including the 11/3/09 email.  UM did not produce the native files for four emails, including the 11/3/09 email, according to Cone.

Cone also filed a motion to enforce court order on January 14, 2018.  (Dkt. 64).  The Court determined that, based on William Rhee's affidavit, the defendants/UM did not violate the court's order and the explanation regarding why certain metadata could not be produced was sufficient.  (Dkt. 108).  The Court found no deficiencies in the production.  *Id*.

According to Cone and her expert, Kevin Knierim, the 11/3/09 email is a forgery based on an examination of the time zone stamps and inconsistencies in the email headers.  (Dkt. 98, Ex. 1).  Relying on Knierim's affidavit, Cone maintains that the 11/3/09 email is an impossibility because there was no place in the continental United States from which defendants could have sent the emails with the time stamps on that date.  Thus, she maintains that the email is a forgery.

Defendants/UM argue that Cone's motion is based on disputed facts.  The author of the email testified that he did not alter the email.  (Dkt. 104-2, Ex. 1, pp. 140-141).  They also point out that Cone has offered no evidence to corroborate her claim that she never received the email in question.  Cone did not produce any emails from the October 2009 to December 2009 time period.  And her expert, Mr. Knierim, says he obtained metadata from Cone's email account from January 2010.  He did not reference any metadata from Cone's AOL account in November 2009 when the alleged "faked" email was sent, and he does not explain why he did not examine her account from 2009 if he had access to metadata from January

2010.  Defendants/UM also maintain that Cone and Knierim ignore the affidavit of Rhee, which explains the effect on metadata of UM's migration to the Google email system in 2012.  (Dkt. 104-5, Ex. 4).  He explains that metadata could have altered during migration.  *Id*.  Thus, defendants/UM assert that any falsification of emails is a disputed factual issue, particularly since the same emails are in the possession of several other recipients.

According to defendants/UM, the current motion does not cure these failures.  Rather, Cone continues to assert her lack of memory of receiving the emails as the basis for her forgery accusations.  (Dkt. 98, Pg ID 3666, n. 4).  Cone's "Supplemental Declaration of Kevin Knierim" does not cure the other deficiencies. First, the declaration contains two paragraphs numbered 17 (*see* Dkt. 98, Pg ID 3688, 3689) with the same first sentence:

> VERSION 1: "17. Figure 1 is a copy of the Internet header for the November 3, 2009 email. The email is a physical impossibility: there is no place in the Continental United States from which Defendants could have sent the emails with those time zone stamps." (Dkt. 98, Pg ID 3688).

> VERSION 2: "17. Figure 1 is a copy of the Internet header for the November 3, 2009 email. An examination of its text and Internet header evidences of fabrication including incorrect that the November 3, 2009 email is fabricated." (Dkt. 98, Pg ID 3689).

The second sentences in Version 1 and Version 2 are different.  Version 1 does not include the words "fabrication" or "fabricated," whereas Version 2 does and is the

only reference in the entire declaration purporting to opine on any "fabrication." Defendants/UM assert that Version 2, however, is incomprehensible and appears in a different font from the rest of the declaration, raising concerns as to its authenticity.

More importantly, defendants/UM assert that Cone's motion and her experts still have not addressed UM's explanation for the metadata alterations, which is supported by the sworn declaration of Rhee: the alterations took place during the migration to a different email platform. The substance of Knierim's supplemental declaration focuses, instead, on alleged inconsistencies in timestamps shown in the metadata of the produced emails, which has been previously explained by Rhee. *See e.g.*, Dkt. 69-16, ¶¶ 5, 18. Outside of the inconsistent time-stamps, Knierim's supplemental declaration also continues to rely only on Cone's own memory of not having received the emails in question. (Dkt. 98, Pg ID 3687, ¶ 10). Rather than respond to the substance of UM's explanation for the inconsistent metadata with any sworn testimony, Cone simply resorts to a refrain of "it is forged." Defendants/UM have consistently confirmed the authenticity of the email, while Cone continues to deny their authenticity without refuting UM's explanation.

## III.   ANALYSIS AND CONCLUSION

As an initial matter, defendants' argument that Cone's motion for sanctions is governed by Federal Rule of Civil Procedure 11 and should be denied based on

her failure to follow the safe harbor provisions of Rule, seems somewhat misplaced.  Cone expressly brings her motion under the inherent authority of the court to sanction a party for committing a fraud on the court and does not invoke or otherwise reference Rule 11.  As explained in *Metz v. Unizan Bank*, 655 F.3d 485, 490 (6th Cir. 2011), the court may use its inherent authority to impose sanctions even where Rule 11 also applies.  *See also*, *Chambers v. NASCO*, *Inc.*, 501 U.S. 32, 49 (1991) ("[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct.").  Notably, in *Metz*, the court rejected the notion that the party seeking sanctions only invoked the court's inherent authority to avoid the procedural safeguards found in Rule 11, such as the 21-day safe harbor rule.  *Id.* at 490.

Generally, whether under Rule 37(b) or the Court's inherent authority, the factors a district court considers when imposing a particularly severe sanction are the same.  *Hamama v. Adducci*, --- F.Supp.3d ---; 2018 WL 6060489, *25 (E.D. Mich. Nov. 20, 2018) (citing *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994)).  In considering the imposition of such sanctions, the court must consider (i) whether a party's failure to cooperate with discovery is the result of willfulness, bad faith, or fault; (ii) whether the other side was prejudiced by the conduct; (iii) whether the disobedient party was warned of the potential sanctions;

and (iv) whether less drastic sanctions were considered or imposed.  *Universal Health Grp. v. Allstate Ins. Co*., 703 F.3d 953, 956 (6th Cir. 2013).

Here, however, Cone argues that defendants/UM perpetrated a fraud on the court by submitting fabricated evidence in the form of the 11/3/09 email.  Federal courts have the inherent authority to sanction bad-faith conduct, as well as conduct that is "tantamount to bad faith."  *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011).  Bad faith is associated with conduct that is intentional or reckless. *Plastech Holding Corp. v. WM Greentech Automotive Corp.*, 257 F.Supp.3d 867 (E.D. Mich. 2017) (citing *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008); *United States v. Wheeler*, 154 F.Supp.2d 1075, 1078 (E.D. Mich. 2001) (sanctions under court's inherent authority warranted for reckless or bad-faith conduct, and defining "recklessness" as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care," such that it is "more than mere negligence but less than intent").  As explained in *Plastech*, examples of bad faith include filing a frivolous suit with an improper motive or committing a fraud on the court.  *Id*. (citing *Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 301-302 (6th Cir. 2016); *see also Chambers*, 501 U.S. at 45-46 (court may impose sanctions if it finds that "fraud has been practiced upon it, or that the very temple of justice has been defiled"); *Murray v. City of Columbus, Ohio*, 534 Fed. Appx. 479, 484 (6th Cir. 2013) (Bad faith "includes situations

where fraud has been practiced upon the court and where a party shows bad faith by delaying or disrupting the litigation.")).  "Courts have routinely held that a party commits a fraud on the court when it fabricates evidence and submits that evidence to the court to support the party's claims."  *Plastech*, at 874 (collecting cases).

In *Plastech*, the court examined the standard of proof required to show a fraud on the court, noting a circuit split between the clear and convincing standard and the preponderance of the evidence standard.  *Id*. at 872.  "Although the Sixth Circuit has not expressly addressed this particular issue, it appears as though it would likely not require the higher burden of clear and convincing proof."  *Id.* at 873 (citing *Williamson*, 826 F.3d at 302 (holding that the test used to decide whether a judgment should be vacated for fraud on the court under Rule 60, which requires clear and convincing evidence, "is not applicable in this case because this case involves a court's inherent power to sanction" for bad-faith conduct). In *Plastech*, the court did not apply the factors set forth in *Universal Health Grp.*, *supra*, but determined that a preponderance of the evidence established that the nonmoving party had fabricated evidence, which constituted bad faith and led to a fraud on the court.  Based on this analysis, the court dismissed the nonmoving party's claims with prejudice, despite the party's argument that its position remained meritorious regardless of the fabricated evidence.  *Id*. at 878.

Regardless of the evidentiary standard applied here, the undersigned suggests that Cone has not established, even by a preponderance of the evidence, that the 11/3/09 email is fabricated or that a fraud on the court has occurred.  As defendants/UM point out, they have provided unrebutted evidence to support the authenticity of the 11/3/09 email, including the testimony of the email's author that he did not alter the email.  (Dkt. 104, Ex. 1, pp. 140-141).  They also point out that Cone has offered no evidence to corroborate her claim that she never received the email in question, given that she did not produce any emails from the October 2009 to December 2009 time period.  As the defendants/UM point out, while Knierim says he obtained metadata from Cone's email account from January 2010, he does not refer to any metadata from Cone's AOL account in November 2009 when the purportedly fabricated email was sent.  And, Cone and Knierim ignore the affidavit of Rhee, which explains the effect on metadata of UM's migration to the Google email system in 2012.  (Dkt. 104-5, Ex. 4).  Rhee explains that metadata could have been altered during migration.  *Id*.  Cone simply offers no evidence to rebut defendants' evidence that metadata was altered during the migration.

Cone asserts in her reply that the June 26, 2017 letter from UM counsel Misbah Shahid validates her claim that the email migration did not alter the time zone stamp.  She claims that Shahid states that the date fields were not altered

10

during the migration.  (Dkt. 109, p. 2).  However, the letter's passage on which she

relies suggests otherwise:

> As to your various queries on why the emails produced
> look the way that they do in terms of format and
> inconsistencies in headers, the migration process outlined
> above was not without issue. A third party vender,
> Appirio, was consulted on technical aspects of the
> migration but significant issues occurred moving
> metadata from the Exchange servers to M+Google.
> When messages were transferred from the exchange
> server to M+Google not all original message headers
> were preserved and new ones were added by the
> migration process. Therefore, not all of the message
> headers are original to the emails as they existed on the
> Exchange server and no present action can re-construct
> the exchange server as it existed before. When the
> documents procured from Google Vault in M-box format
> were reviewed, Mozilla Thunderbird was used to ensure
> that the headers correctly represented the date sent. etc.
> Nevertheless, original transactional headers of emails
> ("received'" headers and possibly others), as they were
> on the Exchange server, were not preserved when they
> were transferred to M+Google and the visual presentation
> of the emails and visual artifacts, fonts, etc., are how
> Thunderbird viewed and printed the messages.  Fields
> like "To, From, Cc, Subject, and Date (where present)"
> should be the same, but the other meta-information in the
> message headers relate to the transfer of the email from
> Exchange to M+Google rather than their original delivery
> to our in-house Exchange server in 2009.

(Dkt. 109-2, Pg ID 3883).  This paragraph does not suggest that date fields or time

stamps would not be altered in any emails produced, and nothing in Shahid's letter

otherwise lends support for Cone's theory that the 11/3/09 email was fabricated.

In the face of the unrebutted evidence offered by defendants/UM, Cone's evidence

regarding her own memory and the time stamp does not establish, by a preponderance of the evidence, that the email in question is fabricated.[2]

Moreover, to constitute a fraud on the court, the court must have *actually* been deceived and here it was not. *Elaster v. Hamilton Co. Dep't of Ed.*, 2017 WL 1207583 (E.D. Tenn. Mar. 31, 2017) ((citing *Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010) (explaining that fraud on the court only exists if the misconduct deceives the court); *Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1992) (holding that "only actions that actually subvert the judicial process can be the basis for upsetting otherwise settled decrees" on the basis of fraud on the court.)). Cone does not argue or point to any decision of the court that relied on the substance of 11/3/09 email or otherwise establish that, even if the email is fabricated, its use has actually caused a fraud on the court. As explained in *In re: Samaritan Alliance, LLC*, 2014 WL 4104195, *8 (E.D. Ky. Aug. 18, 2014), lies may subject an attorney to discipline, but they do not automatically constitute a fraud on the court unless such lies are "capable of obstructing an opposing litigant." That is, there is no fraud on the court where "the opposing litigant was in a position to challenge the alleged misrepresentation but chose not to do so." *Id.*

---

[2] Cone's supplemental amended affidavit from Knierim (Dkt. 110), as distinguished from Knierim's supplemental declaration (Dkt. 98, Pg ID 3686) discussed *supra*, was stricken by the Court as untimely filed and an improper attempt to bring new facts in at the reply stage. (Dkt. 125). The Court expressly concluded that Knierim's supplemental amended affidavit would not be considered in the context of Cone's motion for sanctions. *Id.*

Here, Cone is plainly in a position to challenge the authenticity of the 11/3/09 email and has done so.  Accordingly, there has been no fraud on the Court.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS DENYING** plaintiff's motion for sanctions.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 15, 2019                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 15, 2019, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel and/or parties of record.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov