UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Margaret Cone,

      Plaintiff,

v.                                                    Case No. 16-11306

Mark Tessler, *et al.*,                          Sean F. Cox
                                                 United States District Court Judge
      Defendants.
_____/

## OPINION & ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Margaret Cone filed suit against three Defendants (Mark Tessler, Sherman Jackson, and David Howell) in this action, based upon diversity jurisdiction. Cone asserts breach of contract, unjust enrichment, and fraudulent misrepresentation claims. Those claims stem from an alleged agreement with Defendants to host an educational program at the University of Michigan. This is now the third lawsuit that has been filed against these three Defendants stemming from that alleged agreement.

The matter is currently before the Court on Defendants' Renewed Motion for Summary Judgment. The motion has been fully briefed by the parties and the Court concludes that oral argument would not aid the decisional process. The Court therefore orders that the motion shall be decided without oral argument. For the reasons set forth below, the Court shall GRANT the motion because all of Cone's claims are barred by the applicable statutes of limitation. In addition, while the Court need not reach any other challenges, the Court also concludes that other challenges to Plaintiff's claims have merit.

## BACKGROUND

The named Plaintiff in this action is Margaret Cone ("Cone"), a licensed attorney in Michigan. After terminating her counsel, since June of 2018, Cone has been proceeding in this case *pro se*.

The World Leadership Program Institute ("the Institute") is a District of Columbia corporation that was formed by Cone on October 10, 2010. (ECF No. 130 at PageID.4541).

This is now the third civil action that has been filed against Defendants Mark Tessler ("Tessler"), Sherman Jackson ("Jackson"), and David Howell ("Howell") that relates to an alleged agreement with Defendants to host an educational program at the University of Michigan.

**Federal Case Number 14-13852, Filed By The Institute Alone**

On October 6, 2014, the Institute alone filed suit in the United States District Court for the Eastern District of Michigan, based on federal-question jurisdiction. That suit was filed against the three Defendants in this case (Tessler, Jackson, and Howell), along with the Board of Regents of the University of Michigan, and the Center for Political Studies, Institute of Social Research. That case, Case Number 14-13852, was assigned to the Honorable Stephen J. Murphy.

The complaint included the following counts: 1) Breach of Contract, asserted against the University of Michigan, Tessler, and Jackson (but not Howell); 2) Fraud and Misrepresentation asserted against all Defendants; 3) Unjust Enrichment and Promissory Estoppel, asserted against the University of Michigan, Tessler, and Jackson (but not Howell); and 4) a § 1983 claim for unlawful deprivation of property.

In an Opinion & Order issued on April 28, 2015, Judge Murphy dismissed the § 1983

claim as barred by the applicable statute of limitations. Having dismissed the only federal claim in the action, Judge Murphy declined to exercise supplemental jurisdiction over the remaining state-law claims and dismissed those claims without prejudice.

### The 2015 State-Court Case Filed By The Institute Alone

On June 30, 2015, acting through counsel, the Institute alone filed a lawsuit in state court against Defendants Mark Tessler, Sherman Jackson, Nancy Burns, and David Howell. Cone was not named as a plaintiff in the action.

In its complaint, the Institute asserted four counts against Defendants: 1) breach of contract; 2) Fraud and Misrepresentation; 3) unjust enrichment; and 4) promissory estoppel. (*See* state-court complaint, ECF No. 54-3). All of those claims centered on an alleged agreement Defendants had with the Institute to host an educational program at the University of Michigan.

All of the Defendants in that action filed motions for summary disposition. In those motions, the parties asserted that the claims against them should be dismissed for several reasons, including that the sole named plaintiff in the action (the Institute) had no standing to bring the claims in the complaint because it did not even exist at the time of the alleged events that form the basis of the claims. The trial court ultimately agreed with Defendants on the standing issue and declined to consider any of the Defendants' other arguments in their motions.

In response to the motion, the Institute did not seek leave to file an amended complaint. Rather, the Institute filed responses opposing those motions, affirmatively asserting that it is the proper party to the suit. (ECF No. 60-3).

The trial court heard oral argument on the motions. (ECF No. 60-4). During oral

3

argument, the Institute's Counsel acknowledged on the record that Margaret Cone is a licensed Michigan attorney and that she set up and managed both the Institute and another entity called East West Learning Initiative, Inc. (*Id.* at Pg ID 1644-45).

At the hearing, Defense Counsel argued that the Institute "doesn't have standing to bring this case because the [named] plaintiff did not exist at the time of any of the alleged actions." (*Id*. at Pg ID 1641). The trial court ultimately agreed with Defendants on the standing issue and declined to consider any of the Defendants' other arguments in their motions. (ECF No. 60-4 at Pg ID 1648-49).

In an Order issued on November 4, 2015, the trial court granted Defendants' motions for summary disposition, "for the reasons stated on the record," and dismissed the claims against Defendants *with prejudice*. In addition, the trial court ordered the Institute to pay Defendants $5,000.00 "in sanctions for filing a frivolous case." (ECF No. 54-4).

Thereafter, the Institute filed a Motion for Reconsideration. (ECF No. 54-5). That motion asked the Court to reverse the sanction award and allow Plaintiff to file an amended complaint in order to name a different plaintiff. The trial court denied that motion and the Institute appealed.

**Margaret Cone Files This Third Case On April 8, 2016.**

On April 8, 2016, acting through counsel, Cone filed this action against Tessler, Jackson, and Howell, based on diversity jurisdiction. No other Defendants, such as the University of Michigan, are named as Defendants in this action.

Cone's First Amended Complaint is the operative complaint in this action. It asserts claims against three Defendants: 1) Tessler; 2) Jackson; and 3) Howell.

4

It asserted the following three claims against Defendants: 1) Breach of Contract (Count I); 2) Fraudulent Misrepresentation (Count II); and 3) Promissory Estoppel and Unjust Enrichment (Count III).

**The Court's September 21, 2016 Rulings On Defendants' Motions to Dismiss**

In May of 2016, each of the three Defendants filed their own separate Motion to Dismiss, brought under Fed. R. Civ. P. 12(b)(6). (ECF Nos. 6/7,[1] 8, and 9).

In an Opinion & Order issued on September 21, 2016, this Court ruled on the motions to dismiss. In it, this Court noted that the motions were "complicated by the fact that: 1) the three defendants each filed a separate motion, even though they were raising the same or very similar challenges; 2) Cone filed a First Amended Complaint, including additional allegations, after Defendants had filed their motions; and 3) both sides ma[d]e references to Cone's original complaint rather than the First Amended Complaint." (ECF No. 25 at Pg ID 671). Based upon what was presented, the Court granted the motion to the extent that it dismissed the breach of contract and promissory estoppel/unjust enrichment claims against Defendant Howell as untimely. It denied the motion in all other respects, concluding that Defendants other statute of limitations challenges appeared to lack merit. The Court also declined to consider some arguments made for the first time in Defendants' reply briefs – such as whether Cone's claims are barred by res judicata.

**On February 9, 2017, The Michigan Court Of Appeals Affirmed The State-Court's Rulings**

On February 9, 2017, the Michigan Court of Appeals affirmed the trial court's rulings in

---

[1]Defense Counsel filed the same motion on behalf of Tessler twice.

the State-Court Case, including the sanction award, in an unpublished opinion. (ECF No. 54-6). In doing so, the appellate court found that "the *Institute had no reasonable basis to believe that it was the aggrieved party in this lawsuit.* It did not exist until after the actions leading to the suit occurred. Nevertheless, the Institute both asserted that it was the proper party and that it was a successor entity without any evidence to support its positions. Because Cone founded and represented both entities, the Institute knew or should have known which entities existed at which times during this dispute." (*Id*.) (emphasis added).

> **This Court Denied Defendants' Motion For Judgment On The Pleadings, Ruling That Cone's Claims In This Action Are Not Barred By Res Judicata.**

Defendants filed a Motion for Judgment on the Pleadings in this case, asking this Court to rule that Cone's claims in this action are barred by res judicata, based on the dismissal with prejudice in the State-Court Case. In opposing that motion, Cone argued that Defendants could not establish res judicata because: 1) a dismissal for lack of standing is not a determination on the merits for purposes of res judicata; and 2) Defendants cannot establish that the Institute was in privity with Plaintiff for purposes of res judicata. (ECF No. 60 at PageID.1540) ("Even if Defendants could show a determination on the merits, they could not properly demonstrate that the [Institute] was in privity for purposes of res judicata with Margaret Cone. They privity test fails because the [Institute] did not exist and did not have standing to assert the claims. As a result, Margaret Cone's claims and interests were not and could not be represented by the [Institute]."); (*see also* ECF No. 60 at PageID.1547) ("The [Institute] cannot, and does not, contend that it represented the same legal right – in fact the opposite is true. Margaret Cone's role with the [Institute] does not render her, and all her claims including those that predated the [Institute]'s existence, in privity with the [Institute] and its claims.").

6

In an Opinion & Order issued on August 28, 2018, this Court denied Defendants' motion, ruling that the claims in this action are not barred by res judicata by virtue of rulings in the State-Court Case.

**Defendants' Renewed Motion For Summary Judgment Is Now Before The Court**

Now, following the close of discovery, the matter is before the Court on Defendants' Renewed Motion for Summary Judgment. This motion seeks summary judgment as to all remaining claims.

## STANDARD OF DECISION

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

## ANALYSIS

This action is in federal court based upon diversity jurisdiction and the parties agree that Michigan law applies to Cone's claims in this action.

**I.     All Of Cone's Claims In This Action Are Barred The Applicable Statutes of Limitation.**

Because this Court's jurisdiction is based on diversity of citizenship, Michigan's statutes

of limitations apply to Cone's claims in this action. *Blaha v. A.H. Robins & Co.*, 708 F.2d 238, 239 (6th Cir. 1983); *Martello v. Santana*, 713 F.3d 309, 314 (6th Cir. 2013).

Defendants correctly note that a six-year statute of limitations applies to each of Cone's claims in this action.

Mich. Comp. Laws § 600.5807(8) "provides for a six-year limitations period for breach of contract" claims, starting from the date the claim "accrued." "Breach of contract claims accrue 'at the time of the asserted breach of contract.'" *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1133 (6th Cir. 1995) (citations omitted).

A six-year statute of limitations also applies to Cone's promissory estoppel / unjust enrichment count. *Id.*; *Huhtala v. Travelers Ins. Co.*, 401 Mich. 118 (1977); Mich. Comp. Laws § 600.5815.

The limitations period for fraudulent misrepresentation claims is also six years. Mich. Comp. Laws § 600.5813; *Boyle v. General Motors Corp.*, 468 Mich. 226, 230 (2003); *Shaya v. Countrywide Home Loans, Inc.*, 489 F. App'x 815, 818 (6th Cir. 2012). A fraud claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mich. Comp. Laws § 600.5827. Thus, Michigan has rejected a discovery rule for fraud claims. *Boyle*, 468 Mich. at 231.

Notably, in response to Defendants' motion, Cone does not dispute that a six-year statute of limitations applies to each of the claims she asserts in this action. Cone also does not dispute that each of her claims accrued more than six years before she filed this case on April 8, 2016.[2]

---

[2]For example, as to her breach of contract claims, Cone has conceded that her breach of contract claims against Tessler and Jackson accrued on February 12, 2010 (ECF No. 12 at PageID.273 and ECF no. 15 at PageID.452) and her claim against Howell accrued on February

Rather, Cone asserts that her claims are not barred by the applicable statutes of limitation because the limitations periods were tolled by virtue of the Institute's prior federal action. Cone further asserts that the law-of-case doctrine precludes this Court from reconsidering its prior rulings on the statute of limitations issues.

### A. The Law-Of-The-Case Doctrine Does Not Preclude This Court From Reconsidering The Statute-Of-Limitations Issues.

"A district court's application of the law of the case doctrine to that court's own rulings is reviewed for abuse of discretion because it is a 'discretionary tool' meant to promote judicial efficiency and not a limit on the court's power." *Ominex Energy, Inc. v. Blohm*, 374 F. App'x 643, 651 (6th Cir. 2010) (citing *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990)). That is, the law-of-the-case doctrine "as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresse[s] the practice of courts generally to refuse to reopen what has been decided, not a limit to their power" to do so. *In re Kenneth Allen Knight Trust*, 303 F.3d 671, 677 (6th Cir. 2002). A district court can reconsider its own prior ruling when there is a "cogent reason" to do so, such as the presentation of new evidence or if the court concludes the prior decision was in error based upon its understanding of the issues as the case develops. *Ominex Energy, Inc., supra.*

Here, the Court previously rejected some of Defendants' statute of limitations arguments at the motion-to-dismiss phase, concluding that "the statute of limitations challenges *appear to lack merit*." (ECF No. 25 at PageID.672) (emphasis added). The Court concluded that the prior federal action appeared to toll the statutes of limitation. At that time, however, the facts

---

18, 2010. (ECF No. 11 at PageID.207).

regarding those issues were not well-developed.

Defendants' opening briefs argued that all of Cone's claims were barred by the applicable statutes of limitations and did not address tolling. Defendants noted the two prior cases only in a footnote, and that an appeal of the State-Court Case was currently pending. Then, Cone's responses asserted that her claims should not be dismissed as time-barred because of tolling. Defendants' reply briefs asserted that tolling did not apply, but focused on the dismissal of the State-Court Case, without addressing whether tolling applied by virtue of the prior federal action. Perhaps that was because the reply brief raised and focused on a new argument, res judicata. As a result, the parties did not focus on whether or not the prior federal action tolled the applicable statutes of limitation.

Moreover, in defending against Defendants' Motion for Judgment on the Pleadings, Cone made statements that support Defendants' argument that the Institute's prior federal action does not toll the statutes of limitations for Cone.

Thus, having addressed several motions now and being far more familiar with underlying facts associated with both prior actions filed against Defendants, the Court's understanding of these issues has changed such that it would be appropriate to reconsider these issues.

**B.     The Institute's Filing Of The Prior Federal Action Against Defendants Does Not Toll The Applicable Statutes Of Limitation For Cone.**

Again, Cone does not dispute that a six-year statute of limitations applies to each of the claims she asserts in this action or that each of her claims accrued more than six years before she filed this case on April 8, 2016. Rather, Cone contends that her claims in this action are not time-barred because the applicable statutes of limitation were tolled by virtue of the Institute's prior federal action.

Cone claims that, pursuant to Mich. Comp. Laws § 600.5856, the running of the limitations periods for her claims was tolled during the time that the Institute's prior federal action was pending.

That tolling statute "applies to prior lawsuits between the parties which have not been adjudicated on the merits." *Federal Kemper Ins. Co. v. Isaacson*, 145 Mich. App. 179, 183 (1985). For purposes of the tolling statute, a dismissal without prejudice is not considered to be an adjudication on the merits. *Id*.

"Where a prior action has ended without an adjudication on the merits, the tolling statute is applicable to a renewed action by *a different plaintiff who represents the same interest as the original plaintiff*." *Id.* (emphasis added). Not all subsequent actions filed by a different plaintiff against the same defendant get the benefit of tolling. To benefit from tolling, the plaintiff in the current action has to "represent the same interest" as the plaintiff who filed the prior action. For example, that was the case in *Affiliated Bank*, where, as subrogee of the estate, the plaintiff stood in the same position, "with all the same rights," as its subrogor with respect to the action against the defendant. *Id.*

Cone, as the party asserting that tolling applies to save her claims, has the burden of proving that she is entitled to tolling under the statute. *Warren Consol. Sch. v. W.R. Grace & Co.*, 205 Mich. App. 580, 583 (1994) ("[W]here it appears that the cause of action is prima facie barred, the burden of proof is upon the party seeking to enforce the cause of action to show facts taking the case out of the operation of the statute of limitations."); *McLaughlin v. Aetna Life Ins. Co. of Hartford, Conn*., 221 Mich 479, 483 (1922); *Zenith Indus. Corp. v. Dep't of Treasury*, 130 Mich. App. 464, 468 (1983); *Goodman v. Vanguard Ins. Co.*, 1999 WL 137592 at * 2 (6th Cir.

1999); *Thiss v. A.O. Smith Corp.*, 1993 WL 771013 at * 2 (W.D. Mich. 1993) ("[U]nder Michigan law, the plaintiff has the burden to establish an exception to the statute of limitations.")

Here, Cone asserts that she gets the benefit of tolling because she is a different plaintiff in a subsequent action against Defendants. Cone claims that she "represents the same interest as the original plaintiff," the Institute. But Cone does not explain how she can be deemed to represent the same interest as the Institute, when the Institute did not even exist at the time of the alleged events that form the basis of her claims and, therefore, lacked standing to bring these claims against Defendants in the prior actions.

Moreover, Cone has made statements to this Court acknowledging that Cone *does not* represent the same interests as the Institute. (ECF No. 60 at PageID.1540) (Defendants "could not properly demonstrate that the [Institute] was in privity for purposes of res judicata with Margaret Cone. They privity test fails because the [Institute] did not exist and did not have standing to assert the claims. As a result, Margaret Cone's claims and interests were not and could not be represented by the [Institute]."); (ECF No. 60 at PageID.1547) ("The [Institute] cannot, and does not, contend that it represented the same legal right – in fact the opposite is true. Margaret Cone's role with the [Institute] does not render her, and all her claims including those that predated the [Institute]'s existence, in privity with the [Institute] and its claims.").

Defendants argue, persuasively, that the Institute's prior federal lawsuit against them does not toll the statute of limitations for Cone. They note that in order for that prior federal case to toll the statute of limitations, Cone must represent the same interests as the Institute. (Defs.' Br. at 5). They claim that the Institute could not have represented the same interests as Cone because the Institute did not even exist at the time of the underlying events and lacked standing

to assert claims against Defendants.

Defendants contend that, under Michigan law, "tolling of the statute of limitations does not occur if the original plaintiff is not the real party in interest or lacked standing to sue." (Defs.' Br. at 6). Defendants direct the Court to two cases in support of this position, *Taunt* and *Cotter.* *Taunt v. Oakwood United Hosps.,* 2008 WL 1931569 (E.D. Mich. 2008); and *Cotter v. Britt,* 2007 WL 1576386 (Mich. App. 2007).

In *Taunt*, the Honorable Paul Borman ruled that, under Michigan law, the statute of limitations was not tolled by virtue of a prior action filed by a plaintiff who lacked standing to bring that prior action.

In that case, Raymond Robbins was involved in a car accident on February 21, 2004 and was treated at Oakwood Hospital. He and his wife filed bankruptcy later that same year. Taunt was appointed as Trustee of the bankruptcy estate in 2004.

On July 11, 2006, Robbins, not the Trustee, filed a negligence/medical malpractice suit against Oakwood in state court. In October, Oakwood filed a motion to dismiss. On April 10, 2007, the state court dismissed the case because the Robbins lacked standing to bring the case. On May 18, 2007, the Trustee filed suit against Oakwood in federal court and Oakwood filed a motion to dismiss, arguing the suit was barred by the statute of limitations.

It was undisputed that the suit filed by the Trustee was filed outside the applicable period of limitations. The Trustee argued that the statute of limitations was tolled by the state-court action filed by Robbins against Oakwood and the filing of the second suit related back to that time. Judge Borman concluded that the Trustee's tolling argument failed under Michigan law. In doing so, he explained:

In the recent Supreme Court of Michigan case, *Miller v. Chapman Contracting,* 477 Mich. 102, 730 N.W.2d 462, (2007), a plaintiff's attorney improperly named an individual as the plaintiff rather than his bankruptcy trustee. After the statute of limitations expired, the attorney attempted to amend the complaint to add the bankruptcy trustee as a plaintiff, in response to defendants motion to dismiss the case for lack of standing. *Id.* at 104, 730 N.W.2d 462. The Supreme Court of Michigan expressly held that "the relation-back doctrine does not apply to the addition of new parties," and therefore the amendment was futile and properly denied. *Id.* at 106, 730 N.W.2d 462. Further, the court noted that the addition of the bankruptcy trustee as a plaintiff was not a correction of a misnomer but rather the "addition of a wholly new and different party." *Id.* at 107, 730 N.W.2d 462. Therefore, the court held that where a party seeks to substitute a trustee as the proper plaintiff in an action after the statute of limitations has expired, the amendment is futile and must be denied *because the statute of limitations has expired.3 See Hall v. State Farm Mutual Auto. Ins.,* 215 Fed. Appx. 423, 427, 428 n. 2 (6th Cir. Jan.29, 2007) (unpublished) (recognizing pursuant to Michigan law the "relation-back" doctrine does not extend to the addition of new parties.") (citing *Employers Mut. Casualty Co. v. Petroleum Equip. .,* 190 Mich.App. 57, 63, 475 N.W.2d 418 (Mich.Ct.App.1991)).

Further in *Cotter v. Britt,* 2007 WL 1576386, *1-3, the Michigan Court of Appeals found that where a medical malpractice suit was filed by a party who lacked standing, the fact the improper plaintiff had filed a suit did not operate to toll the statute of limitations pursuant to the tolling statute § 600.5856(a).

Although a harsh result, it is abundantly clear that pursuant to current Michigan case law, the statute of limitations was not tolled by the filing of the original action by a party without standing in state court, nor does the relation-back doctrine operate to allow Plaintiff's instant action to "relate-back" to the original filing date in state court.

*Id.* at *6-7.

In a footnote, Judge Borman further explained why Cone's tolling argument in this case

should be rejected:

The Court recognizes that although Plaintiff has presented his arguments as two separate theories, (1) the tolling of the statute of limitations when a suit is filed and (2) the relation-bak theory for the addition of new parties, such construction does not make any logical sense. This is true because, Michigan law clearly bars an improper plaintiff from adding the proper party after the statute of limitations has run and relating-back to the original date the suit was filed. **Plaintiff's proposed construction would allow the proper plaintiff to file a new suit in**

**the same court against the same defendants and rely upon the fact that the
statute of limitations had been tolled when the improper plaintiff filed their
claim. This result is illogical. Therefore, it appears implicit in the *Miller*
decision that if relation-back doctrine does not extend to the addition of a
proper plaintiff, it is because the statute of limitations has continued to run
*despite* the filing of the original suit.** *See Cotter v. Britt*, 2007 WL 1576386, *3
(Mich.Ct. App. May 31, 2007) (unpublished).

*Id*. at * 6 n.4 (italics in original; bolding added for emphasis added).

In *Cotter*, the mother of a minor child filed suit against the defendant alleging that her

daughter was injured due to medical malpractice. At the time she filed suit, Cotter had not been

named as next friend to her daughter. That did not occur until after the applicable statute of

limitation had run. The trial court dismissed the action and Cotter appealed. The Michigan

Court of Appeals affirmed. In doing so, it rejected Cotter's argument that tolling under Mich.

Comp. Laws § 600.5856 applied. The court explained that the minor daughter "could not file

suit on her own behalf, and suit was not filed by a properly appointed next friend. We conclude

that under the circumstances, the filing of the complaint did not toll the applicable statute of

limitations." *Id*. at *3.

Here, the only prior lawsuits that were filed against Defendants were filed by the

Institute, not Cone. It is now undisputed that the Institute, which was not formed until October

10, 2010, did not even exist at the time of the alleged events that form the basis of Cone's claims

against Defendants. As such, the Institute lacked standing to bring the claims against Defendants

in both the State-Court Case and the prior federal case. Like the situations presented in *Taunt*

and *Cotter*, those prior cases, filed by a party who lacked standing, do not operate to toll the

statutes of limitation under Mich. Comp. Laws § 600.5856.

The Court agrees with Defendants that all of Cone's claims in this action are all time-

barred.

**II.     In Addition, Although The Court Need Not Reach Them, Other Challenges To Cone's Claims Also Have Merit.**

Given the above ruling, the Court need not reach Defendants' additional challenges to Cone's claims. Nevertheless, the Court finds that alternative arguments also have merit.

**A.     Cone's Breach Of Contract Claims Against Tessler And Jackson Fail Because Cone Cannot Establish That They Agreed To Specific Contract Terms With Her, And The Claims Are Barred By Michigan's Statute Of Frauds, Which Requires A Signed Writing When The Alleged Contract Cannot Be Performed Within A Year.**

Defendants' motion also asserts that Cone's breach of contract claims against Tessler and Jackson fail because Cone cannot show that she formed a contract with either of them. Tessler and Jackson assert that Cone cannot establish the existence of a binding contact between them and Cone. They note that Cone's First Amended Complaint alleged that the contract consisted of a series of emails and assert that those emails cannot constitute a binding contract. They further note that Tessler was not even copied on those emails. Defendants Tessler and Jackson further assert that Cone's contract claims against them fail because Cone was dealing with them on behalf a disclosed principal, the University of Michigan. They also assert that Cone's contract claims fail because they are barred by Michigan's statute of frauds.

In her First Amended Complaint, Cone alleged that in September of 2008, "after several discussions, meetings, exchanges of e-mails and proposal between Jackson, Tessler and Plaintiff, the Parties reached an agreement that the University of Michigan International Institute would host the WLP under the faculty direction of Defendant Jackson (the "Contract"). (First Am. Compl. at ¶ 13). That is, Cone appears to be asserting that she had a contract, evidenced by e-

mails, with Jackson and Tessler, but that the contract committed the University of Michigan's International Institute to host the WLP program.

During discovery, Cone was asked about her breach of contract count in this case. Cone testified that she understood that her contract was with the University of Michigan, which is not a party to this case:

> Q. There was never a contract between Margaret Cone and the University of Michigan, was there?
>
> A. There was a contract between me and Sherman, me and Mark, me and Dave Howell.
>
> Q. Well, the same contract or three separate contracts?
>
> A. Well, they're different with different obligations.
>
> Q. So three different contracts?
>
> A. Well, three different – no. They're overlap. I mean they all made representations to me about what they were going to do and they breached those representations.
>
> Q. So let's go back. Any written contract between you and the University of Michigan?
>
> A. I'm thinking.
>
> Mr. Juckiness: You mean document signed?
>
> The Witness: Signed by whom? What do you mean?
>
> By Mr. Bourque:
>
> Q. A written contract between you and the University of Michigan.
>
> A. Well, no, actually there isn't even a written contract between the University and the UAE. There's no written contracts.
>
> Q. – there are no written contracts. So –
>
> A. No written contracts.
>
> Q. – were there oral agreements?
>
> A. Yes.
>
> Q. Okay, was there an oral agreement between you and the University of Michigan?
>
> A. There was –
>
> Q. Margaret Cone individually?

A.   Well, yes.  Yes.

Q.   What was it?

A.   That they were going to do – I came here and they were going to do certain things, which I laid out, which is basically do the project, follow – they were going to go with the procedures, they were going to be here, right?  They made those representations to me.  I mean, who else were they going to make it to? They didn't have the relationship with the UAE. They never spoke to the UAE. So whatever Mark – what did they do it on?  What was their contract?  They took money – who was their contract with, right?

Q.   This is a case where I get to ask the questions.

A.   No, but I'm just saying is that –

Q.   And so my question again is –

A.   – there is none.  There's no contracts.

Q.   – was there a written contract between you and the University of Michigan?

A.   Yes.  Well, I would say there's an understanding, which does back to that –

Q.   I didn't ask about understanding.

A.   Yes, I – yes, a contract, there was.  There was a series of emails and exchanges that constitute our contract.

Q.   Okay, and when did those take place?

A.   They started in 2008 and they continued in through 2010.

Q.   Okay, so where in those – and so you are assuming that you have an agreement with the University of Michigan because Sherman Jackson sent emails?

A.   Sherman made representations to me, and you – what I would suggest is look at the emails, they gave me letterhead, they – let me look at the first letter of December 1.  They make representations, right?

Q.   Yep.

A.   That was on behalf of the University.

Q.   So when did your contract come into place with the University?

A.   In 2008.

Q.   2008.  And under that, what were you to be paid?

A.   Well, we weren't there yet.  We didn't have any money.

Q.   So under that, what was the University of Michigan going to be paying?

A.      Nothing.

. . . .

Q.      So let me ask you this: is there another person that you know of who can
        testify as to the terms of any contract that you have with the University of
        Michigan?

A.      Sherman and Mark and Howell.

(Pl.'s Dep. at 114-118).

In seeking summary judgment as to Cone's breach of contract count, Defendants make

several arguments.  They first argue that Cone cannot establish that either Tessler or Jackson

entered into a binding contract with her.

In response to this challenge, Cone's brief asserts that Tessler and Jackson formed, and

then breached, a contract with her.  Cone's brief asserts she "has provided substantial testimony,

and other corroborated evidence and documents, establishing an agreement between Ms. Cone

and Mark Tessler and Sherman Jackson.  The terms the agreement as discussed, supra, pages 1

and 10."  (ECF No. 132 at PageID.4616).  As Defendants' reply brief notes, however, pages one

and ten of Cone's brief do not discuss, let alone present evidence to establish, that the parties

agreed to any specific contract terms:

> Page 1 of her brief is an introduction that describes no contract terms.  Page 10 is
> a fraud discussion that contains no contract terms.  The only evidence she
> describes of the terms of those contracts involve letters written by Tessler (D.E.
> N. 133-12) or Tessler and Jackson (D.E. Nos. 133-13, 133-15) to Ambassador
> Otaiba or their letter to Sheik Al Tayeb (D.E. No.133-14).  Those letters provide
> no evidence of any agreement between Plaintiff and either Defendant.  Plaintiff
> tries to engraft an agreement with Defendants Tessler and Jackson onto letters
> sent to the UAE and Al Azhar.  However, the undisputed facts show that the UAE
> agreed to give UM the WLP funds, gave UM the funds, and the funds were
> returned by UM to the UAE.  If the letters provide evidence of the terms of a
> contract regarding the WLP, then it is undisputed that any contract based on those

terms was with UM and not Defendants individually. Plaintiff was never the WLP sponsor, never provided funds to UN (EX 33, p. 204 lines 23-25 and p. 205, lines 1-17), and provided no funds to either Defendant.

(Defs.' Reply Br. at 6-7).

The Court agrees that Cone has failed to establish she that had a valid contract with either Defendant Tessler or Jackson because she has not established that either agreed to any specific contract terms with her.

Defendants' motion also asserts that there is no signed writing by Tessler or Jackson for any contract with Cone. They assert that any alleged oral agreements relating to the WLP could not be fully performed within one year since the WLP was to be a two-year program and, as a result, Plaintiff's contract claims are barred by Michigan's statute of frauds. (Defs.' Br. at 22). In support of that argument, they state:

> Plaintiff's alleged contract for the WLP was for two years. Plaintiff outlined a two-year period for the Ambassador. *Cone dep. P. 158.* Ambassador Otailba emailed Plaintiff that the UAE would fund the WLP for a two-year period. *Cone dep. p. 147.* The proposed timeline for the WLP was from January 2010 to summer 2012. *Dkt. 14, ¶25.* Letters from defendants to the UAE Ambassador state that the WLP budgetary calendar would begin May 1, 2009 and end October 1, 2011. *Dkt. 1-5, 1-7.* Plaintiff seeks damages for lost profits from subsequent years of the program *Dkt. 14, ¶90, 100.*

(Defs.' Br. at 21).

In response, Cone's brief suggests that because some of the alleged contractual obligations could be performed within a year, the statute of frauds should not apply "even if the WLP might last two years." (Pl.'s Br. at 21). That argument is not persuasive.

Mich. Comp. Laws § 566.132 governs agreements, contracts, or promises for which a

signed writing is required and provides, in pertinent part, that:

> Sec. 2 (1) In the following cases an agreement, contract, or promise is void unless that agreement, contract or promise, or a note or memorandum of the agreement, contract, or promise is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:

> (a) An agreement that, by its terms, is not to be performed within 1 year from the making of the agreement.

Mich. Comp. Laws § 566.132(1)(a). To satisfy Michigan's statute of frauds, "the document must have 'substantial probative value in establishing the contract' and must reduce 'the essential terms' of the agreement to writing." *Blackward Properties, LLC v. Bank of America*, 476 F. App'x 639, 641 (6th Cir. 2012) (citations omitted).

Cone's First Amended Complaint reflects that the WLP had a multi-year timeline, including courses being taught at the University of Michigan in the summer of 2010, and again in the summer of 2011. (Pl.'s First Am. Compl. at ¶ 25). Cone alleges the contract was entered into by the parties in September of 2008. (*Id*. at ¶¶ 13 & 87). Among other things, Cone alleges that the parties' contract required Jackson to provide curriculum and staffing and serving as lead professor for the WLP and required Tessler and Howell to provide administration and oversight for the WLP. (*Id*. at 87). The alleged contract could not be performed within a year of its making (ie., within a year of September 2008).

Cone's brief also argues that, even if the statute of frauds applies to the alleged contract, there are adequate writings signed by Defendants:

> Even if the statute of fraud applies, there are adequate writings to prove a contract. Michigan law does not apply narrow, rigid rules for compliance with the statute of frauds. *Opdyke Investment Co. v. Norris Grain Co.*, 413 Mich. 354,

367 (1982). The rule only requires "note or memorandum of the agreement" to be in writing and signed. There are a sufficient "note or memorandum" and numerous statements of terms signed by Jackson, Tessler. These statements are corroborated by the e-mails.

(Pl.'s Br. at 21). But Cone's brief does not identify the alleged writings signed by either Tessler or Jackson that are sufficient to satisfy the statute of frauds. (*Id.*).

> **B.    Cone's Unjust Enrichment Claims Against Defendants Fail Because Defendants Did Not Receive A Benefit From Cone That Would Result In An Inequality To Cone Because Of The Retention Of The Funds By Defendants.**

Cone's First Amended Complaint asserts an unjust enrichment claim against Defendants, alleging:

> 102.   Defendants Jackson, Tessler and Howell promised to host the WLP at the University of Michigan International Institute under the faculty direction of Defendant Jackson, that they would provide faculty, curriculum, classroom space, course materials and administrative support and staff or the WLP as well as manage the WLP Funds according to the approved budget.
>
> 103.   In reliance on Defendants' promises Plaintiff sought and obtained the WLP Funds in the amount of $2,033,590.00 from the UAE.
>
> 104.   Defendants never performed their promises, kept in excess of $820,000.00 of the WLP Funds and then returned the remaining Funds, approximately $1,200,000.00 to the UAE.
>
> 105.   As a result of Defendants; failure to host the WLP, provide administrative support, faculty, curriculum and to properly administer the WLP Funds in their possession, Plaintiff suffered damages in the amount of $438,155.68 in out of pocket expenses, in excess of $300,000 in expected profits from the 2010 Program, and in excess of $1,200,000.00 in loss of reputation and loss of expected profits from subsequent years' Programs funded by the UAE.
>
> 106.   Defendants will be unjustly enriched if they are allowed to keep the $820,053.00 despite their failure to perform any of their promises.

(First Am. Compl. at 20).

Defendants assert that Cone's unjust enrichment claim fails because they were not enriched by Cone's money, explaining:

> Plaintiff sued Defendants Tessler and Jackson for unjust enrichment. (D.E. No. 14 at Pg ID 412, ¶104, 106). Recovery under unjust enrichment is available upon a showing of "(1) the receipt of a benefit by the defendant from plaintiff and (2) an inequality resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc*., 273 Mich App 187, 195 (2006).
>
> The UAE sent the WLP funds to the UM. EX 1 p. 135; EX 17. The UM returned the unused funds to the UAE. EX 1 p. 136; (D.E. No. 14 at Pg ID 412, ¶ 104). Plaintiff did not provide her personal funds to any of the defendants for use in connection with the WLP. EX 1 p. 138. The only monies paid to Defendants Tessler and Jackson for their WLP activities were paid from the UAE funds at UM. EX 21; EX 22; EX 1 p.55, 135-136, 138, 236. Defendants Jackson and Tessler did not receive a benefit from Plaintiff so her unjust enrichment claim cannot stand.

(Defs.' Br. at 25).

In response, Cone argues that as "detailed in Pls Motion for Sanctions," "Tessler, Jackson and Howell were enriched at Ms. Cone's expense. She brought the funds based on their representations. Despite backing out of the program, Jackson and Tessler arranged to award themselves payments out of the WLP budget through so-called 'discretionary' and 'sundry' accounts that Defendant David Howell manufactured. Jackson justified his payments by lying on a federally mandated 'effort report.'" (Pl.'s Br. at 22). Cone has not explained how she can assert an unjust enrichment claim against Defendants under the facts presented here.

The Court concludes that Cone's unjust enrichment cannot be maintained in this action. Whether a claim for unjust enrichment can be maintained is question of law. *Morris Pumps v. Centerline Piping, Inc*., 273 Mich.App. 187, 193 (2006). The essential elements of an unjust enrichment claim, "upon which recovery may be had, are the receipt of a benefit by a defendant

from a plaintiff, which benefit is inequitable that the defendant retain." *Id.* at 195. "Thus, in order to sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Id.*

Here, it is undisputed that the WLP funds provided to the University were provided by the UAE, not Cone. Defendants returned the unused portion of those funds to the UAE but are alleged to have kept approximately $800,000 of those funds provided by the UAE. Thus, Defendants did not receive a benefit from Cone that would result in an inequality to Cone because of the retention of those funds by Defendants.

## CONCLUSION & ORDER

For the reasons set forth above, the Court ORDERS that Defendants' Motion for Summary Judgment is GRANTED and this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: April 8, 2019